Our final case of the day is Boardman v. Service Employees International Union. Mr. Scheffner. Good morning, Your Honors. If it may please the Court, this case is before you on an appeal based upon our belief that the Circuit Court basically bought the entirety of the argument of the local union as to why it imposed a trusteeship over Local 73. The question here, we believe, is... You mean the Trial Court? The Trial Court. I apologize. District Court. District Court. I'm sorry, he's going back to where he stayed in federal. My apologies. So the issue then here is whether the union is somehow exempt from its own procedures or whether it is held at the same standard as any corporation or any individual in our society. As we enumerated, it had a number of procedures in place, all of which it stretched, ignored, somehow violated in order to get to the result that it wanted. And it parroted to the lower court that, look, we could do this because we have an exemption that says that, yeah, on good cause, we can extend this. And if it was only one of those situations, we probably wouldn't be here. The problem is that they did this over and over and over again. You're arguing then for a great deal of rigidity in these procedures. The rules did have good cause extensions. And so there's the emergency trusteeship, then there is the hearing, which, granted, is later than it could have been, but there was the power to extend it. And I'm not sure why we should take such a dark inference from that, as you're suggesting. Well, and I think the response is that the inference could be drawn from, one, the repeated violations, not just one, but the repeated violations of this procedural network. But are you arguing – I mean, do we have a general rule that procedural perfection in and of itself is not a goal? What you're looking for is the effect of the procedures on the underlying substantive rights. And so if somebody didn't get notice of a hearing until the day before or maybe never at all, that's very easy to show what that procedural flaw did to the ability to assert the underlying rights. But I don't – can you tell me what effect these various extensions had on your client? Okay. And I will, first of all, add that it's not just the extensions. It's the entirety of the process. What, you know, denial of party status to Ms. Boardman, who was the elected president. But why should she have had party status under the union's rules? Well, she was – you know, the issue is one of enforcing the democracy of the local unions. She was the elected official of that union, had been elected over and over again over a number of years. She did nothing wrong. But Ms. Henry finds that the – that chaos had ensued, let's just say, at this union. And does what the international person is entitled to do imposes this emergency trusteeship? That's provided for in the constitution of the union. It's provided for, but as we note, that's basically a trumped-up provision in the sense that Ms. Boardman took the action to take Matthew Brandon and suspend him because of actions he had taken that were contrary to the constitution of the local union, contrary to the interests of the local bargaining unit, contrary to the membership of the local union. And that, of course, was recognized later on as being – as having saved the bargaining unit and having been in the interest. So she was regaled as a hero later on. But the president of the international knew that if she had taken the original jurisdiction of the internal charges that Ms. Boardman had filed and had she scheduled a hearing, as she was entitled to do, that would have resolved the whole thing as to Mr. – I'm sorry, as to Mr. Brandon, but would not have removed Ms. Boardman. So the only way that she could remove Ms. Boardman is to bide her time and then say, okay, there is an issue here, we're going to trustee so we can remove everybody. So can I ask you, though – I mean, we're not here to review directly what the union did or didn't do. This is brought under the LMRDA. We need to find some problem in the way the union governance was being handled that is addressed by this federal statute. And the federal statute doesn't micromanage the way unions self-govern, but there are some broader things. So I think we need to be careful not to spend all our time saying, would I have decided this the same way, knowing what you're saying. That's not the issue. Is there an LMRDA problem? Well, I don't believe so, because the issue really here is Title I, the freedom of speech. And that is that every action taken by the international was to shut down the freedom of speech of President Boardman, barring him from being able to call witnesses at any hearing, putting off hearings on it, not allowing him to call witnesses, subpoena witnesses. What kind of due process is that? Even though the LMRDA itself says that members are entitled to due process prior to being removed as members. Well, the effect of terminating Mr. Boardman was removing him as a member. So that was the effect of that. Now, I just want to jump, because there's one issue, one additional thing that I think is important here is that, because we talk about that. The district court proceeded on the belief that one good reason for a trusteeship suffices, even if there are also bad ones. And your appellate brief takes the opposite position. When was that legal position first articulated in this litigation? It was factually argued. I don't think we cited the case law in the trial court below, but it was factually argued. I don't know what you mean that something was factually argued. A legal position requires a statement of a legal position. Did you ever in the district court contend that one bad reason spoils the trusteeship? We argued the LMRDA, which the language is such, yes. That's not an answer to my question. Did you ever contend that under the statute, one bad reason spoils a trusteeship, even if there are also good reasons for the trusteeship? Other than the factual argument? No, I don't think. Your opponent said that you waived it, and that's what we're getting to. I understand that, but our position is we don't even get to that issue because, as the lower court noted, that the court retained jurisdiction to adjudicate the Title III determination, determining whether the imposition of the trusteeship was even valid in the first place. And it was our position it was not valid because of the reasons that we had stated. If you find that it wasn't valid, we never get to the issue of whether one good justification is sufficient. It simply wasn't valid because it was trumped up in an effort to remove President Boardman from her office and remove all officers, whereas if they had pursued the internal charges as they should have in this case, all they could have done is move it around. That whole line of argument just strikes me as very odd. It was Boardman herself who asked the International to intervene. Correct. And it did. She just didn't like what happened when the International intervened. And I don't think we're supposed to be substituting our judgment for the International. Well, we're not substituting the judgment. The issue is whether a jury could infer from the way that the International took control of this and the way they responded whether that is retaliation for what Ms. Boardman alleges is her free speech where she has opposed the International President over the years. A jury could infer from these actions, whether they ignore the procedure that they have, something that is set in place by the International Constitution, to then say, no, we're just going to go jump right to doing a trusteeship, especially when there really is no basis for it. They talk about there being this discord between Mr. Brandon and Ms. Boardman, yet in Apley's brief they acknowledge that Ms. Boardman had supported Mr. Brandon to be the successor president of the local union, and that only changed in June of 2016 when she learned that Mr. Brandon had taken steps that were contrary to the interests of the union. With that, I have about 45 seconds, which I would ask to reserve for any response. Certainly, counsel. Mr. Dyad. Thank you. Good morning. Because there's not a scintilla of direct evidence that Mary Kay Henry was even thinking about any of Christine Boardman's long-ago speech when she decided to trust the local 73, let alone any evidence that she was acting because of that speech, Ms. Boardman has been forced to rely on a very tenuous circumstantial evidence theory of causation to try to secure a reversal of Judge Pallmeyer's very thorough and careful ruling. Ms. Boardman's presentation in her brief places heavy reliance on four main arguments. The one that we heard the most of today was this argument about deviation from procedures being some indicator of pretext. That argument doesn't fly as Judge Pallmeyer explained. First of all, there were no violations of the SEIU Constitution. There's not even a claim that the actual Constitution was violated. There's a fallback argument. Well, okay, so they didn't violate the Constitution. They followed every procedure by the letter. But the union nevertheless didn't act in accordance with its sort of customary way of dealing with trusteeships. But that fell apart as well because the evidence was that the International had used the emergency procedure before. When did that evidence come into the record?  Yeah, that was in the record in Mary K. Henry's declaration. Well, I think it also came in, excuse me, it was in Alma Henderson's declaration. So Alma Henderson keeps the records of trusteeships and laid out that there had been an emergency trusteeship before this one. I can't remember if there were one or four. There were three others that were in question. Actually, there were four emergency trusteeships in the period that Alma Henderson gave records about. One preceded this. So that, I bring that up just to negate the idea that somehow after doing this one they decided they better do more. I mean, there's just nothing to that argument. So the procedures were followed. The customs were followed. There was no evidence of SEIU treating this trusteeship differently than others that were similarly scheduled. I'm having a little trouble following. Is SEIU different from the International or from the local? Oh, I'm sorry. We've got two unions here. They're both, I would think, SEIU. It would help me if you use the words local and international to figure out the relation between them. I will do that. That's absolutely fair. When I was referring to SEIU before, I was referring to the International, but I'll stick with that location. So the International was following its own procedures. It followed its own constitution to the letter. And there was no showing that it had acted differently in this trusteeship than it had acted in previous trusteeships. So I think that dispenses with the argument that we heard the most of today. The next argument is that the meeting of Local 73's executive board wasn't as chaotic as the International portrayed it to be and wasn't so chaotic as to allow Mary K. Henry even to believe, which is the standard, what her honest belief was. So chaotic as not even to allow her to believe that it had evinced a breakdown in governance. But here, Ms. Boardman's own charges, and she filed a series of charges during the critical period. And those were the documents that were before Mary K. Henry when she acted. And all of those charging documents give a lengthy, detailed, and rather harrowing account of that July 15th executive board meeting. And the key document on this point is Exhibit R to ECF 87-1. And that was Boardman's July 22nd supplement to her earlier charges. And in contrast to her appellate brief and to her presentation today where she tries to downplay the proposition that that meeting was problematic and that there was any risk of violence, Ms. Boardman's own charges said that tensions were so high at the meeting that she was worried that if she called the security that was already there to actually address the disruption, then violence would have broken out. Those were her words. So the nature of the underlying theory, though, of this case has to be that there's something the international did that failed so egregiously to comply with its own constitution or rights of the governing people, which include, I suppose, presidents of locals and other people, that the federal standards are somehow engaged. And that's why I'm trying to get back to what's the actual theory in front of us. Yeah, what she ultimately needs to prove, and this is crucial, what she really needs to prove if we step back is that the trusteeship was imposed because of her speech, which took place long before the trusteeship. That's the ultimate question. This isn't a question where someone close in time to the hearing is saying, well, the procedures weren't followed. They run into court and ask for an injunction to have the hearing postponed and run according to proper procedures. Not this case. This case is down to one issue, which is whether Boardman's speech from the year 2010 through 2015 was the cause or a cause, even a cause, of the trusteeship. Judge Eastbrook is correct that the way that it was argued below with no objection from the other side was whether it was the sole cause. Yeah, one proper cause is enough is what Judge Pallmeyer thought. And so the ultimate question here is whether speech was the motivating factor, not even whether some other untoward thing was a motivating factor. But there's nothing at all in the record, as I've said, that shows that SEIU or Mary Kay Henry was even thinking about the speech, let alone that it was on her mind and then acted on that. And I think Judge Easterbrook also made the crucial point here, which is that it's undisputed that Christine Boardman was looking for the international's intervention in July of 2016. And the point of the trusteeship provision of the Landrum-Griffin Act, if we want to go to first principles, is to protect the autonomy of locals. So you don't see trusteeship cases where the local is saying, we wanted our autonomy interfered with, but just exactly the way that the president of the local preferred the autonomy to be interfered with. That is not a viable theory. And I think that there's one document that I think deserves a fair amount of attention in that series of charging documents was Exhibit S to 87-1. And in 87, in that exhibit, Ms. Boardman is forwarding another series of charges, not her charges against Brandon, but his charges against three lower level people in the union. And she says, she asked the international to take jurisdiction over those charges as well. And her cover note says, bear with me, it says, we are requesting that the international assume original jurisdiction over all of these charges as well. And this letter is sent on July 23rd, so it's eight days after the meeting. And she says, given recent events at the executive board meeting of the local on July 15th, 2016, it is very likely that a trial of these charges before the local's executive board would result in further turmoil and further division within the local. This would seriously jeopardize the interest of the local and the international. So she's saying that her own local can't process ordinary charges between its own members through its ordinary executive board process, and the international needs to step in. And then she says that it's pretext for the international to step in because she doesn't like this precise way the international decided to solve the problem. So I think this is a particularly, you know, weak challenge to a trusteeship. And if the court doesn't have further questions, I'll leave it at that. Thank you, counsel. Anything further, Mr. Schaffner? Just very briefly. That's guaranteed. I understand. I'm looking at the time. I can tell that. I just wanted to respond to one thing, and that is the issue of the nexus between speech and the actions. 2015 is not all that remote from 2016. But more importantly, the reason that it is important is that it is our theory that the only way that the international could have taken this action is it had to wait for some event that it could argue, okay, now we can trustee so we can remove Ms. Lordman from office. So the fact that the response to her speech wasn't immediate is not surprising and expected here. Thank you, Judge. Thank you very much. The case is taken under advisement, and the court will be in recess.